ANTHONY CAPODICE and JANEVA CAPODICE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Capodice v. Commissioner
Docket No. 5651-85.
United States Tax Court
T.C. Memo 1988-561; 1988 Tax Ct. Memo LEXIS 590; 56 T.C.M. (CCH) 829; T.C.M. (RIA) 88561; December 8, 1988. George R. Flynn, for the petitioners. Clinton Fried, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined deficiencies in petitioners' 1981 and 1982 Federal income taxes in the amounts of $ 3,914 and $ 4,105, respectively. By an amended Answer to the Petition, respondent claims increased deficiencies in the amounts of $ 4,642 for 1981 (or a total of $ 8,556 for 1981) and $ 4,572 for 1982 (or a total of $ 8,677 for 1982). After concessions, the issues for decision are: (1) whether petitioners used or held a building located at 1312 South Main, Bloomington, Illinois (the Bloomington Property), in 1981 and 1982 with an objective of making a profit therefrom; and if so, (a) whether petitioners should have recognized as rental income *592 in 1981 and 1982 the value of remodeling services performed by their sons to the Bloomington property in 1976; and (b) whether (for purposes of claiming depreciation) petitioners have substantiated the amount of expenditures for remodeling the Bloomington property; (2) whether petitioners used or held two parcels of land (one located in Normal, Illinois, and the other in Sebring, Florida) in 1981 and 1982 with an objective of making a profit therefrom; and (3) whether petitioners are entitled to a depreciation deduction and an investment tax credit with respect to a dump truck. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners, husband and wife, resided in Bloomington, Illinois, during the years in issue and at the time the petition herein was filed. Petitioner Anthony Capodice and his brother, Nicholas (now deceased) operated, in corporate form, a wholesale produce business (the produce business) founded by their father. Anthony Capodice was also a 50 percent partner in a real estate partnership with Nicholas and Nicholas' son; the partnership was *593 known as Capodice Brothers. Petitioners have three sons: Anthony, Jr. (Tony); David; and John. They are a close-knit family. Tony, the eldest of the three children, worked in the produce business; David and John did not. When Nicholas refused to permit David and John to join the produce business, David and John decided to pursue the possibility of establishing their own business selling Honda motorcycles. To assist them in this pursuit, petitioners purchased (through an agent) a two-story building located at 312 South Main, Bloomington, Illinois (the Bloomington property) on December 16, 1975, which had been owned by Capodice Brothers. The purchase price for the Bloomington property was $ 42,500, of which petitioners paid $ 32,500 and David and John paid the remaining $ 10,000; title to the property was held in a land trust with petitioners as sole beneficiaries. The building required extensive remodeling, which was performed on a full-time basis by David and on a part-time basis by John. Petitioners paid David $ 22,000 as reimbursement for building materials and compensation to contractors hired to perform services that David and John were unable to perform. When the remodeling *594 was completed, the Bloomington property was worth substantially more than the amount petitioners and their sons had paid for it plus the $ 22,000 petitioners paid to David as reimbursement. After the building was remodeled, it was occupied by a Honda dealership, which David and John hoped to acquire. In 1979, David and John discovered that they could not acquire the Honda dealership. Thereafter, John started a Suzuki motorcycle sales, service, and parts business from the Bloomington property; David started an excavating business, which did not necessitate his using the Bloomington property. Neither John nor David received monetary remuneration for the remodeling. Rather, as compensation for their services, John was permitted to use the building without paying rent to his parents, and David received $ 400 monthly from John until he had received sufficient compensation (as determined by petitioners) for his labor. The amount John paid to David was as follows: 1979
$ 4,781
1980
4,800
1981
4,396
1982
4,800
1983
3,530
1984
862
John ceased making payments to David in September, 1984, and thereafter began paying rent to his parents. Between September 21, 1984 and *595 December 31, 1985, John paid petitioners $ 3,700 as rent. The fair rental value of the building was $ 800 per month. Had John's business not been successful, petitioners would not have required him to pay rent. On Schedule E of their 1981 and 1982 income tax returns, petitioners deducted the following with respect to the Bloomington property: 1981
1982
Taxes
$  1,620
$  1,617
Insurance
537
328
Depreciation
Building
1,750
1,750
Improvements
2,200
2,200
TOTAL
$  6,107
$  5,895
Petitioners did not itemize deductions for 1981 or 1982. Petitioners reported no income with respect to the Bloomington property for either 1981 or 1982. Respondent disallowed the claimed deductions for both 1981 and 1982 on the basis that the Bloomington property was not property used in a trade or business; respondent further contended that with respect to the depreciation for the improvements, petitioners failed to substantiate the expenditures which formed the basis for the claimed depreciation. By an amended Answer to the Petition, respondent claims petitioners received income ($ 800 per month) in the form of improvements to the Bloomington *596 property in lieu of rent which should have been recognized by them in 1981 and 1982. Accordingly, respondent seeks an increased deficiency for both 1981 and 1982. Petitioners also owned five acres of unimproved land in Normal, Illinois (the Normal property), which they purchased prior to 1960. Petitioners purchased the land believing that it would increase in value and that their sons might want to develop it. In this regard, they declined an opportunity to sell the property to a developer. Water and sewer lines were installed when apartments on land adjacent to the Normal property were built. These improvements were installed at a cost of $ 14,000 to petitioners. On Schedule E of their 1981 and 1982 income tax returns, petitioners deducted the following with respect to the Normal property: 1981
1982
Taxes
$  771
Cleaning and Maintenance
91
Depreciation
$  700
700
TOTAL
$  700
$  1,562
Petitioners reported no income with respect to the Normal property for either 1981 or 1982. Respondent disallowed the claimed deductions on the basis that the Normal property was neither used in a trade or business nor held for *597 the production of income. Petitioners also owned five acres of unimproved residential real estate located in Sebring, Florida (the Sebring property). Petitioners deducted taxes on Schedule E during 1981 and 1982 in the respective amounts of $ 145 and $ 155 with respect to the Florida property. Respondent disallowed such deduction. On Schedule F of their 1981 and 1982 income tax returns, petitioners claimed depreciation deductions in the respective amounts of $ 180 and $ 264 with respect to a dump truck which had been placed in service in 1976 and had been fully depreciated prior to 1981. The depreciation was taken for $ 1,200 in repairs allegedly made to the truck by petitioners' son David. Petitioners also claimed an investment tax credit for the truck in the amount of $ 120 in 1981. The dump truck was purchased for use on the farm on which petitioners and their sons lived. The truck was also used by Mr. Capodice and his sons to run errands and for other personal uses. In addition, David used the truck in his excavating business. The truck was not used in either the produce business or Capodice Brothers. Respondent disallowed the depreciation deduction and investment *598 tax credit claimed with respect to the dump truck on the basis that petitioners failed to prove that they were the owners of the truck and that, if they were, the truck was not used by petitioners in a trade or business or for the production of income. OPINION To qualify for the claimed deductions with respect to the Bloomington, Normal and Sebring properties, petitioners must show that such properties were used by them in a "trade or business" within the meaning of section 162 and section 167(a)(1) or held for the "production of income" within the meaning of section 212 and section 167(a)(2).[1] Essential to such a showing is a demonstration that during the years in question petitioners used or held such properties with an honest and actual objective of making profit therefrom. Dreicer v. Commissioner,78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). Their expectations need not be reasonable ones, but the profit objective must be bona fide. Section 1.183-2(a), Income Tax Regs.; Dreicer v. Commissioner, supra.
*599 Whether petitioners possessed the requisite profit objective is a question of fact, and in determining such objective we give greater weight to objective factors than to one's self-serving statement of intent. Section 1.183-2(a), Income Tax Regs.
Section 1.183-2(b), Income Tax Regs., lists the following nine, nonexclusive factors to be used in determining whether an activity is one engaged in for profit: (1) The manner in which the taxpayer carries on the activity; (2) The expertise of the taxpayer or his advisors; (3) The time and effort expended by the taxpayer in carrying on the activity; (4) The expectation that assets used in the activity may appreciate in value; (5) The success of the taxpayer in carrying on other similar or dissimilar activities; (6) The taxpayer's history of income or losses with respect to the activity; (7) The amount of occasional profits, if any, which are earned; (8) The financial status of the taxpayer; and (9) Elements of personal pleasure or recreation in the activity. No one factor *600 is controlling; rather it is an evaluation of all the facts and circumstances of the case which is determinative. Section 1.183-2(b), Income Tax Regs; Abramson v. Commissioner,86 T.C. 360, 371 (1986); Golanty v. Commissioner,72 T.C. 411, 425 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). Based upon the record, we conclude that petitioners held and used the Bloomington, Normal or Sebring properties in 1981 and 1982 for family purposes, rather than with an honest and actual objective of making a profit. In our opinion, petitioners held and used the Bloomington property for the parental objective of aiding and assisting their son John in the latter's business. In this regard, petitioner Anthony Capodice candidly admitted that he would not attempt to collect rent from John unless his son's business was profitable, stating "blood is thicker than water." Likewise, we believe the Normal and Sebring properties were held by petitioners for the benefit of their sons, rather than with the requisite profit objective. Petitioner Janeva Capodice stated that petitioners declined an offer *601 to sell the Normal property, because "we thought the boys might want to develop it so we didn't sell it." She expressed similar thoughts with respect to the Sebring property. Petitioners' ownership of the properties has not resulted in their receiving any income therefrom for at least the past ten years. Nor is there any evidence that petitioners made a bona fide effort to cause these properties to be income producing. Holding property solely with the expectation that it will eventually increase in value is not sufficient to establish that the property was held with a profit-making intent. Jasionowski v. Commissioner,66 T.C. 312, 323 (1976). Notwithstanding the fact that petitioners did not hold the Bloomington, Normal and Sebring properties in 1981 and 1982 with the requisite profit-making intent, they are entitled to a deduction for real estate taxes as an itemized expense under section 164. As a result of our finding that petitioners held and used the Bloomington property in 1981 and 1982 for personal purposes rather than with the intent of making a profit therefrom, *602 no income is recognizable by them as a result of the remodeling performed by their sons in 1976. The Bloomington property was purchased with family funds (those of petitioners, John and David); the benefits of owning such property (including the use of such property and any appreciation in value) belonged to the family as a whole, rather than any individual member. Accordingly, we hold in favor of petitioners with respect to the increased deficiencies asserted by respondent in his amended Answer. Further, as a result of such finding, and the fact that petitioners had no gross income with respect to the Bloomington property, we need not decide whether (for purposes of claiming depreciation) petitioners have substantiated the amount of expenditures for remodeling of the Bloomington property. The final issue for determination is whether petitioners are entitled to a depreciation deduction and an investment tax credit with respect to the dump truck. Respondent first contends that petitioners failed to prove that they own the dump truck. We disagree. Petitioners' testimony as well as their production of a canceled check for the truck convince us that petitioners owned the dump *603 truck during the two years in issue. We agree, however, with respondent's second basis for disallowing the claimed deduction, i.e., the dump truck was neither used by petitioners in a trade or business nor held by them for the production of income. Petitioners testified that the truck was used for personal errands on their farm, which was also petitioners' residence, [2] and in David's excavating business. Accordingly, petitioners are not entitled to the claimed depreciation deduction and investment tax credit with respect to the dump truck. To reflect the foregoing and concessions by the parties, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.↩
2. Petitioners failed to prove that their farm was conducted as a business or held for the production of income. Even if it were, the record is silent as to the allocation of the business versus personal use of the truck.↩